UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CURTIS CUMMINGS,<br><br>Defendant. | 5:23-50096-KES<br><br>ORDER ADOPTING REPORT & RECOMMENDATION DENYING MOTION TO SUPPRESS |

Defendant, Curtis Cummings, is charged with one count of distribution of a controlled substance resulting in death in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of conspiracy to distribute a controlled substance in violation of 18 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Docket 1. Cummings moves to suppress evidence obtained as a result of the traffic stop leading to his arrest. Docket 38. The court addresses Cummings's second motion to suppress in a separate order. He contends that the seizure of his vehicle was conducted without reasonable suspicion and that the search of his vehicle was conducted without probable cause. *Id.* As a result, Cummings asserts that his Fourth Amendment rights were violated during his detention and search. *Id.*

The court referred Cummings's motion to Magistrate Judge Daneta Wollmann under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing on November 7, 2023, Magistrate Judge Wollmann recommended denying

Cummings's motion to suppress. Dockets 80, 84. Cummings objects to the Report and Recommendation. Docket 86. The United States filed a response to Cummings's objections. Docket 87. After a de novo review of the Report and Recommendation and the record, the court adopts the Report and Recommendation in full and denies Cummings's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 59 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTUAL BACKGROUND

After a de novo review, the court makes the following pertinent factual findings necessary to resolve this dispute:

Deputy Alan Landeros of the Larimer County Sherriff's Office testified that at approximately 12:30 am on November 28, 2022, he was parked in the

2

parking lot of O'Reilly Auto Parts in Wellington, Colorado. From his vantage point, he could observe a gas station near Interstate 25. Deputy Landeros testified that in his experience, the area near Interstate 25 is a location where drug trafficking crimes frequently occur.

Deputy Landeros testified that he observed a Chevy Suburban and an older Subaru sedan. Deputy Landeros ran a license plate check of the Subaru and learned that the registered owner of that vehicle was on probation for a drug crime. Deputy Landeros observed a male, later identified to be Cummings, going back and forth between both vehicles. Cummings filled the Chevy Suburban with gas and moved a dog and dog bed from the Subaru to the Chevy Suburban. Based on this, Cumming testified that he believed that the vehicles were travelling together.

Deputy Landeros testified that at this point, his suspicions were heightened due to the time of night, the high crime area in which the cars were located, and the fact that the registered owner of the Subaru was on probation for a drug crime. Deputy Landeros observed Cummings enter the Chevy Suburban and leave the parking lot going southbound. The Subaru remained in the parking lot of the gas station. After about two to three minutes, Deputy Landeros testified that he saw the Subaru leave the parking lot driving southbound.

Deputy Landeros began tailing the Subaru. He testified that the Subaru then made a quick and abrupt left hand turn at its first opportunity into the parking lot of an "obviously closed" McDonalds. Deputy Landeros testified that

3

the McDonalds' arch was lit up, but the interior lights were off, and no other vehicles were parked in the restaurant's lot. Deputy Landeros positioned his patrol vehicle to the south of the McDonalds. From his position he could see that the Chevy Suburban and Subaru were parked next to each other in the darkest and most hidden corner of the McDonalds parking lot. Deputy Landeros testified that Cummings was walking back and forth between the vehicles and that he observed Cummings remove his jacket despite it being a cold night. Deputy Landeros testified that Cummings was aware of his patrol vehicle and exhibited signs of paranoia such as frequently looking at the patrol vehicle.

Deputy Landeros testified that the Chevy Suburban and Subaru remained in the McDonalds parking lot for approximately five minutes. At that point Cummings entered the Chevy Suburban, drove around the McDonalds without attempting to go through the drive-through, and exited the parking lot northbound. Deputy Landeros testified that there were two exits to the McDonalds, and it appeared to him that Cummings used the exit that would put the most distance between himself and Deputy Landeros. Deputy Landeros began tailing the Chevy Suburban, at which point Cummings made another quick right hand turn into the gas station where Deputy Landeros had originally spotted the vehicles. Deputy Landeros returned to the O'Reilly's parking lot and saw the Subaru rejoin the Chevy Suburban in the gas station parking lot.

4

Deputy Landeros testified that he observed the Chevy Suburban and Subaru parked at the gas station parking lot for two to three minutes. At that point, Deputy Landeros observed the Chevy Suburban leave the gas station parking lot a second time, and that in doing so, the Chevy Suburban made a wide turn. Deputy Landeros began tailing the Chevy Suburban again. Deputy Landeros testified that at this point he believed that he had reasonable suspicion that the Chevy Suburban and Subaru were engaged in criminal activity, so he turned on his patrol lights and initiated a stop of the Chevy Suburban.

Deputy Landeros testified that once he activated his patrol lights, Cummings jerked to the right side of the road and continued rolling slowly for a short distance before ultimately stopping. Deputy Landeros approached the Chevy Suburban and greeted Cummings. Deputy Landeros explained that he had stopped Cummings due to the suspicious behavior the two vehicles had exhibited. A short time later, K-9 handler Corporal Jeff Kaley of the Larimer County Sheriff's office arrived on the scene at Deputy Landeros's request. Corporal Kaley's service dog Lukin began a sniff for narcotics. Lukin alerted to the presence of narcotics in the Chevy Suburban. Deputy Landeros searched the vehicle and found a large quantity of blue pills stamped with the "M30" imprint. Deputy Landeros believed that the pills contained fentanyl and arrested Cummings.

**FACTUAL OBJECTION**

Cummings raises one factual objection to Magistrate Judge Wollmann's report and recommendation. He contests Magistrate Judge Wollmann's finding that Deputy Landeros's testimony was credible, particularly as to whether the McDonalds into which Cummings turned was "obviously closed." *See* Docket 86 at 1–2. In support of this, Cummings contends that Deputy Landeros testified that the McDonalds arches were lit up when Cummings pulled into the empty parking lot. *Id.* But Deputy Landeros also testified that the interior lights of the McDonalds were off, and that no other vehicles were in the dark parking lot. The fact that one single observation indicates that an establishment may be open does not contradict Deputy Landeros's testimony that the McDonalds was obviously closed. Thus, after a de novo review of the record, the court overrules Cummings's single factual objection to Magistrate Judge Wollmann's complete and accurate rendition of the relevant facts.

**LEGAL OBJECTION**

Cummings raises one legal objection to the Report and Recommendation. *Id.* at 2. Cummings objects to the magistrate judge's finding that the stop of Cummings's vehicle was supported by reasonable suspicion. *Id.*

The Fourth Amendment of the United States Constitution forbids "unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (citing *Brendlin v. California*,

6

551 U.S. 249, 255-59 (2007)). The Supreme Court has held that an officer may conduct an investigatory stop "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *See Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *United States v. Quinn*, 812 F.3d 694, 697–98 (8th Cir. 2016) (quoting *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995)). "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

      Here, multiple factors support that Deputy Landeros had reasonable suspicion. First, Cumming's vehicle was in a high crime area. Deputy Landeros testified that, from his vantage point at the O'Reilly's Auto Parts parking lot, he spotted the Chevy Suburban and Subaru at a gas station near the interstate highway, in an area where drug transactions frequently occur. "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime[,]" but "the fact that the stop occurred in a 'high crime area' [is] among

7

the relevant contextual considerations." *Id.* Thus, the fact that Deputy Landeros observed Cummings at a gas station where drug transactions frequently occur supports, but is not dispositive to, a finding that Deputy Landeros had reasonable suspicion. *See id.*

Second, Deputy Landeros testified that he first observed Cummings late in the evening at approximately 12:30 am. Where an encounter with a suspect occurs late at night, that may contribute to an officer's reasonable suspicion under the totality of the circumstances. *See United States v. Houston*, 920 F.3d 1168, 1172 (8th Cir. 2019) (noting that the fact that a confrontation with a suspect occurred "in the middle of the night" supported that the officers involved had reasonable suspicion).

Third, Deputy Landeros's testimony highlighted that Cummings's behavior that night was nervous and evasive, another factor that supports reasonable suspicion. *Wardlow*, 528 U.S. at 124. Deputy Landeros testified that the Chevy Suburban departed the gas station parking lot while the Subaru did not depart in what he perceived as an effort to "bait" him away from the Subaru. When the Subaru departed the parking lot several minutes later, Deputy Landeros followed behind it. The Subaru then abruptly took the first opportunity it had to turn left into the parking lot of the closed McDonalds. Deputy Landeros then observed the Subaru park next to the Chevy Suburban in a dark corner of the McDonalds parking lot. Neither driver went through the drive through or attempted to enter the closed McDonalds, and Deputy Landeros observed Cummings walking back and forth between the vehicles. Deputy Landeros also observed Cummings

8

frequently looking back at Deputy Landeros's patrol vehicle. Deputy Landeros testified that Cummings was "100 percent" aware that he was being observed by Deputy Landeros.

After about five minutes, Deputy Landeros saw the two vehicles leave the McDonalds without going through the drive through. Deputy Landeros followed the vehicles and ended up positioned behind the Chevy Suburban and in front of the Subaru. Deputy Landeros then observed the Chevy Suburban quickly turn back into the gas station where Deputy Landeros had initially observed the vehicles. *Id.* During this second stop at the gas station, neither driver left their car to get gas or go inside the gas station.

The Subaru's abrupt left turn into the closed McDonalds after Deputy Landeros began following it is the sort of "erratic driving or obvious attempt[] to evade officers [that] can support a reasonable suspicion." *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975). The Chevy Suburban's abrupt turn back into the gas station after Deputy Landeros began tailing it also supported his reasonable suspicion. Moreover, Cumming's nervous behavior in the McDonalds parking lot such as walking back and forth and frequently looking back at Deputy Landeros further contributed to Deputy Landeros's reasonable suspicion.

In short, under the totality of the circumstances, Deputy Landeros had reasonable suspicion to believe that a crime was occurring because he knew that the area in which he observed Cummings's vehicle was a hot spot for drug distribution, the time of night when he observed the vehicles was suspicious,

9

Cummings displayed visible paranoia after he realized he was being observed, and both drivers engaged in evasive maneuvers.

Even if Deputy Landeros did not have reasonable suspicion to stop Cummings's vehicle prior when he observed Cummings make a wide turn out of the gas station, probable cause to stop the Chevy Suburban was gained at that point. The plain language of Colorado Revised Statute § 42-4-901 requires a driver turning right to remain "as close as practicable to the right-hand curb or edge of the roadway." Colo. Rev. Stat § 42-4-901 (2023). "A traffic violation, no matter how minor, gives probable cause for a traffic stop." *Wood v. Wooten*, 986 F.3d 1079, 1081 (8th Cir. 2021). Because Deputy Landeros observed Cummings make a wide turn, he had probable cause to stop the vehicle, regardless of his subjective motivations. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (noting that the constitutionality of a traffic stop does not "depend[] on the actual motivations of the individual officers involved"). Thus, Cummings's objection to Magistrate Judge Wollmann's finding that Deputy Landeros had reasonable suspicion to conduct a traffic stop of Cummings's vehicle is overruled because Cummings had probable cause as well as reasonable suspicion to detain Cummings.

## CONCLUSION

Because there is no constitutional violation, the court does not suppress the evidence gathered as a result of the traffic stop. The court adopts Magistrate Judge Wollmann's recommendation and denies Cummings's motion to suppress. Thus, it is

ORDERED that the Report and Recommendation (Docket 84) denying Cummings's motion to suppress is adopted. The motion to suppress (Docket 38) is denied.

Dated January 12, 2024.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE